# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| DONALD ERIC DOLLAR | ) | |
| AIS#285077, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | **CASE NO. 2:15-cv-264-WKW-WC** |
| BRENDA KING, et. al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## SPECIAL REPORT

COME NOW Defendants Brenda King, Dereck Smith, and Frank Matarrese, in the above styled action, by and through undersigned counsel, and file this Special Report pursuant to the Order (Doc. 6) of this Honorable Court.

## PLAINTIFF'S ALLEGATIONS

The Plaintiff's claims stem from an incident where he alleges the Defendants forced him to receive a tattoo to cover up an existing gang tattoo. Substantively, it appears Plaintiff's is claiming a violation of his constitutional rights to freedom of expression under the 1st Amendment and a violation of his 8th Amendment rights to be free from cruel and usual punishment. Plaintiff also asserts the Defendants have violated several sections of the Code of Alabama, the Officer Rules of Conduct, and ADOC Administrative Regulation #208 – Employee Rules of Conduct.

Plaintiff has sued the Defendants in their official and individual capacities. He has sued for compensatory and punitive damages, costs, and declaratory relief.

## DEFENDANTS

1. Brenda King is employed as a Correctional Captain at Draper Correctional Facility, 2828 AL Hwy 143, Elmore, AL 36025.

2. Dereck Smith is employed as a Correctional Officer at Draper Correctional Facility, 2828 AL Hwy 143, Elmore, AL 36025.

3. Frank Matarrese was formerly employed as a Correctional Officer at Draper Correctional Facility. He can be contacted through the undersigned.

## DEFENDANTS' EXHIBITS

1. Exhibit A the Affidavit of Brenda King.

2. Exhibit B is the Affidavit of Dereck Smith.

3. Exhibit C is the Affidavit of Frank Matarrese.

4. Exhibit D is certified experts of the ADOC Medical File of Donald Dollar.

5. Exhibit E is certified excerpts from the Inmate File of Donald Dollar.

## STATEMENT OF THE FACTS

The Plaintiff, Donald Dollar ("Dollar") is an inmate within the Alabama Department of Corrections. At all times relevant to this lawsuit, he was housed at Draper Correctional Facility in Elmore, Alabama.

On or about May, 2014, Dollar was presented to Captain Brenda King in her office at Draper regarding his concerns about gang members within the Southern Brotherhood. (Ex. A). According to Dollar, he had been denounced from the organization, but did not provide details about his concerns or the individuals he was concerned about. (Id.). To verify Dollar's allegations, King spoke with several individuals who were known to be high ranking within the Southern Brotherhood. (Id.). Those individuals indicated that Dollar had a tattoo on his body that represented he was still a member in the gang, despite having been denounced. (Id.). They confirmed with King that they had an individual who could perform the tattoo cover-up and that

would resolve any differences they had with Dollar. (Id.). King did not receive any money or compensation from those individuals as a result of this conversation. (Id.).

King then questioned Dollar as to whether he was willing to have the tattoo covered up. (Id.). Dollar said he was willing and did not give any indication that he felt he was being forced, either by King or his fellow gang members, to have the tattoo covered up. (Id.). Instead, he stated his wish to put his past with the gang behind him. (Id.). King offered Dollar the alternative of being placed into segregation for his own protection, if he felt it was necessary. (Id.). Dollar indicated he did not want to go to segregation and asked King to do whatever she could to help him remain in population. (Id.). At no time did King threaten or curse Dollar, or make derogatory statements regarding his tattoo or gang affiliation. (Id.).

After the discussion with Dollar and the Southern Brotherhood members, the inmates left King's office. (Id.). King did not have them escorted out. (Id.). At no time were Officers Smith and Matarrese present during the exchange, nor where they issued any orders or paid to facilitate the tattoo. (Ex. A, B, & C). None of the Defendants participated in the tattooing, nor do they have personal knowledge has to when or how the tattoo was covered up. (Id.).

At some point following the tattoo cover-up, King was approached by inmate Thomas Moody. (Ex. A). Moody indicated he was the one who covered up the tattoo and wanted to be compensated for his work. (Id.). King gave Moody some canteen items, including tobacco. (Id.).

Dollar's medical records do indicate he was referred to the Hepatitis C Chronic Care Clinic in November, 2014. (Ex. D at 2). At that time, Dollar indicated a history of risk factors including substance abuse, injection drug use, multiple sexual partners, and unsterile tattooing/body piercing. (Id. at 3). Dollar's records indicate at the time he was received by the ADOC, he was documented as having a significant number of tattoos, which were photographed

on September 13, 2012. (Ex. E at 2 [Right Elbow] and 3 [Right Forearm]). Some of Dollar's

tattoos were redocumented on June 25, 2014, which revealed at least two new tattoos which were

acquired while Dollar was in ADOC custody. (Ex. E at 4 [Right Elbow] and 5 [Right Forearm]).

Dollar was documented as having a freshly made tattoo while in ADOC custody, which Dollar

admitted he received in early October, 2012. (Ex. E at 6-7). Dollar has also tested positive for

methamphetamines at least one time since his intake into ADOC in 2012. (Id. at 8).

## ARGUMENT

This cause is due to be dismissed on all claims.  This Court lacks subject matter

jurisdiction on the claims raised by the Plaintiff because he lacks standing. The Defendants are

entitled to Eleventh Amendment immunity for all claims for monetary damages in their official

capacity. The Plaintiff has failed to state a valid claim under the 1st Amendment or 8th

Amendment. The Plaintiff has failed to make a claim against the Defendants for deliberate

indifference. The Defendants are entitled to qualified immunity. Finally, Plaintiff's claims for

damages violate the PLRA because he cannot prove an injury that was more than *de minimus*.

## I.    STANDING

This Court lacks subject matter jurisdiction over the Dollar's claims with regard to a

tattoo he received from another inmate.   According to the United States Supreme Court, to

establish standing:

> "First, the plaintiff must have suffered an 'injury in fact'—an
> invasion of a legally protected interest which is (a) concrete and
> particularized, and (b) 'actual or imminent, not "conjectural" or
> "hypothetical." ' Second, there must be a causal connection
> between the injury and the conduct complained of—the injury has
> to be 'fairly ... trace[able] to the challenged action of the
> defendant, and not ... th[e] result [of] the independent action of
> some third party not before the court.' Third, it must be 'likely,' as
> opposed to merely 'speculative,' that the injury will be 'redressed
> by a favorable decision.'

Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In requiring a particular injury, the Court meant "that the injury must affect the plaintiff in a personal and individual way." Id., at 560, n. 1, 112 S.Ct. 2130.   In this case, the Defendants do not dispute that Plaintiff has Hepatitis C. However, the Plaintiff has failed to prove this diagnosis occurred because of the Defendants' acts or omissions as alleged. The totality of his claim is that he concludes he contracted Hepatitis C from an incident that tangentially involved one Defendant. Although Dollar alleges Defendants Smith and Matarrese physically restrained him to receive the tattoo, that allegation is expressly denied by *all* Defendants. (Ex. A-C).

Despite Dollar's admission to engaging in high risk behaviors, as well as documentation of these behaviors on at least three occasions while in ADOC custody, he simply concludes that this incident resulted in his contracting Hepatitis C. This is insufficient to prove standing and this Court should dismiss Dollar's claims for lack of subject matter jurisdiction.

## II.     ELEVENTH AMENDMENT IMMUNITY

To the extent that Defendants are sued in their official capacity for monetary damages, these claims must be considered to be against the State itself. This, in turn, affords Defendants the protection of Eleventh Amendment immunity; the State need not actually be named a party for such immunity to be available. See Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), cert. denied 464 U.S. 932 (1983). For this reason Dollar's claims against the Defendants in their official capacity are barred by Eleventh Amendment immunity and should be dismissed.

## III.     QUALIFIED IMMUNITY

For claims against the Defendants in their individual capacity, they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982). Further, qualified immunity is not just a bar to damages, it is a bar to suit.

Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In analyzing qualified immunity, the reviewing

court must not only focus on the state of the law but what facts the defendant knew at the time of his

challenged conduct. Anderson v. Creighton, 483 U.S. 635, 642 (1987) (tasking the reviewing court

with determining whether "a reasonable officer could have believed [his conduct] to be lawful, in

light of clearly established law *and the information the [defendant] officers possessed*.") (emphasis

added).   The shield of qualified immunity is indeed far-reaching:  "As the qualified immunity

defense has evolved, it provides ample protection to all but the plainly incompetent or those who

knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In fact, the Eleventh

Circuit has observed that "[q]ualified immunity thus represents the rule, rather than the

exception." Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999).

The principles described above remain viable even in light of the United States Supreme

Court's holding in Hope v. Pelzer, 122 S. Ct. 2508 (2002).  The Eleventh Circuit explained that

this Circuit had always allowed room for the denial of qualified immunity in cases where general

principles applied with "obvious clarity."  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th

Cir. 2003).  Because that is rarely the case, however, the court will normally require case law

arising out of a factually similar context before it concludes the public official had sufficient

notice or fair warning.  In other words, "[t]he Supreme Court decision in Hope v. Pelzer, 536

U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), did not change the preexisting law of the

Eleventh Circuit much." Willingham, 321 F.3d at 1300.

Once an official has asserted the defense of qualified immunity and shown that he was

acting within his discretionary capacity, the threshold inquiry a court must undertake is whether

"[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

"The next, sequential step [once it is determined that the Plaintiff has stated a constitutional claim] is to ask whether the right was clearly established."  Saucier, 533 U.S. at 201.  In this part of the analysis, the reviewing court determines whether the defendant public official had "notice" or "fair warning" that his conduct would violate Plaintiff's constitutional rights.  Willingham, 321 F.3d at 1301. The burden is on the Plaintiff to show that the defendant official has violated a clearly established right, and that the law was clearly established.  Travers v. Jones, 323 F.3d 1294, 1295 (11th Cir. 2003) ("Once the defendants established that they were acting within their discretionary authority, a point not in dispute here, the burden shifted to the plaintiff to show that qualified immunity is inappropriate.").

In order to establish that he was acting within his "discretionary capacity," a public official asserting qualified immunity need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir.1981)).  Courts should not be "overly narrow" in interpreting this requirement.  Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). As one district judge from the Middle District of Alabama has observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear."  Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999). Here, the Defendants easily clear the "low hurdle" of demonstrating that any dealings they had with the Plaintiff was within their discretionary authority as employees of the State of Alabama and/or the

Alabama Department of Corrections. All of Dollar's claims arise out of an incident involving him and fellow Southern Brotherhood members at Draper Correctional Facility.

The first aspect of qualified immunity—determining whether the Plaintiff has stated a constitutional claim—while conceptually distinct from consideration of the Plaintiff's claims on the "merits" is, for all practical purposes, not much different from determining whether the Plaintiff has created a genuine issue of material fact on the merits.  In other words, if the Court determines that the Plaintiff has failed to create a genuine issue of fact as to whether the Defendants' actions or inactions violated his First Amendment rights or constituted deliberate indifference to his Eighth Amendment rights, then it necessarily also concludes that the Plaintiff has failed to state a constitutional claim, and the Defendants should be granted qualified immunity without further inquiry.  If, on the other hand, the Court finds that the Plaintiff has stated a constitutional claim, the qualified immunity inquiry proceeds to the "clearly established" stage of analysis.  In that stage of inquiry, the Plaintiff must meet his burden of showing that clearly established law would have indicated to the Defendants, under the circumstances of this case, that their conduct was unlawful.

### A.  First Amendment Claims

The basis of Dollar's first amendment claim is that he is entitled to express his beliefs, even those espousing white supremacy. Dollar alleges that King, who is black, took offense to the message conveyed by Dollar's tattoo, and retaliated against him by having the tattoo covered up. As stated above, Defendant King denies many of Dollar's allegations regarding the scope and nature of her participation, including that Dollar was unwilling and forced to receive the cover-up tattoo. Nevertheless, viewing the facts as Dollar has alleged, he is unable meet his burden of proof as to this claim.

The first amendment prohibits retaliation by state agents when an inmate exercises constitutionally protected speech. The inmate must show "(1) his speech was constitutionally protected; (2) the inmate suffered an adverse action such that the…retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citations omitted). To establish the causal connection, the inmate must demonstrate that the Defendants intended to retaliate in response to the protected speech, and but for that motive, the adverse act would not have occurred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

Here, Dollar's claim must fail. The evidence now before this Court indicates King only participated in the process to the extent necessary to establish that both Dollar and his former-fellow gang members were satisfied with resolving the conflict by having another inmate perform the tattoo cover up. Dollar's only basis for concluding he was the subject of retaliation based on the message conveyed by his tattoo was that King "cursed Dollar" for having his tattoo and then subsequently obeyed the orders of other white supremacists and ordered the tattoo cover-up. His own conclusory allegations are insufficient to establish the subjective intent of Defendant King and establish an essential element of his claim. Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Further, assuming the Court believes Dollar has established a prima facie case with appropriate evidence, the burden then shifts to Defendant King to prove her actions would have been the same despite the protected speech. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). Defendant King vehemently denies her actions and decisions were based on her disapproval of the message conveyed by Dollar's tattoo. Instead, King attempted to

mediate a situation by resolving it to everyone's satisfaction – the elimination of the Southern

Brotherhood's conflict with Dollar and Dollar's desire to remain in general population.

Consequently, Defendant King is entitled to summary judgment on the First Amendment

claim as Dollar has failed to establish a causal relationship between his alleged protected speech

and any action taken against him. Absent his failure to state a constitutional claim, the Defendant

is entitled to qualified immunity.

### B. Eighth Amendment Claims

The Plaintiff alleges that he was subjected to cruel and unusual punishment based on a

'forced' tattoo he received at the direction of Defendant King and while being restrained by

Defendants Smith and Matarrese, and as a result, he contracted Hepatitis C.  These complaints

are patently false and without merit. The Supreme Court of the United States has discussed the

Eighth Amendment implications of prison conditions.

> "The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman,
> 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), but neither does
> it permit inhumane ones, and it is now settled that "the treatment a prisoner
> receives in prison and the conditions under which he is confined are subject to
> scrutiny under the Eighth Amendment," Helling, 509 U.S., at 31, 113 S.Ct., at
> 2480. . . .The Amendment also imposes duties on these officials, who must
> provide humane conditions of confinement; prison officials must ensure that
> inmates receive adequate food, clothing, shelter, and medical care, and must "take
> reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer,
> 468 U.S. 517, 526-527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). See
> Helling, supra, 509 U.S., at 31-32, 113 S.Ct. at 2480; Washington v. Harper, 494
> U.S. 210, 225, 110 S.Ct. 1028, 1038-1039, 108 L.Ed.2d 178 (1990); Estelle, 429
> U.S., at 103, 97 S.Ct. at 290. Cf. DeShaney v. Winnebago County Dept. of Social
> Servs., 489 U.S. 189, 198-199, 109 S.Ct. 998, 1004-1005, 103 L.Ed.2d 249
> (1989)." Id.
>
> To violate the Cruel and Unusual Punishments Clause, a prison official must have
> a "sufficiently culpable state of mind." Ibid.; see also id., at 302-303, 111 S.Ct., at
> 2326 Hudson v. McMillian, supra, 503 U.S., at 8, 112 S.Ct., at 2480. In prison-
> conditions cases that state of mind is one of "deliberate indifference" to inmate
> health or safety, Wilson, supra, 501 U.S., at 302-303, 111 S.Ct., at 2326 see also
> Helling, supra, 509 U.S., at 34-35, 113 S.Ct., at 2481; Hudson v. McMillian,

supra, 503 U.S., at 5, 112 S.Ct., at 998; Estelle, supra, 429 U.S., at 106, 97 S.Ct., at 292, a standard the parties agree governs the claim in this case. The parties disagree, however, on the proper test for deliberate indifference, which we must therefore undertake to define.

Farmer v. Brennan, 511 U.S. 825, 832-834, 114 S.Ct. 1970, 1976 - 1977 (U.S. 1994).

Farmer went on to define deliberate indifference to mean a subjective awareness and refusal to reasonably respond to the perceived risk which reaches the level of criminal recklessness. "[D]eliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." Id. at 836, 114 S.Ct. at 1978. "Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. 511 U.S. at 844, 511 S.Ct. at 1982. Further, in the context of alleged cruel and unusual punishment that "does not purport to be punishment at all" requires a higher level of subjective intent – "obduracy and wantonness rather than inadvertence or error in good faith." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Here, Dollar must demonstrate that Defendants acted with a sufficient culpable state of mind. Defendants Smith and Matarrese absolutely deny this – and deny they participated in the incident or had awareness of it in any way. Defendant King's behavior can at worst be described as "error in good faith." Her primary intent was to resolve a reported conflict between inmates, as is her duty as a Correctional Captain. King received information that the conflict could be resolved over the cover-up of Dollar's gang tattoo. Dollar indicated he was willing to have the tattoo covered to put his gang past behind him, and remain in general population. At best, subjectively, she was negligent in failing to draw the conclusion that the cover-up would actually

occur and that it was possible for Dollar, who already had multiple tattoos including some received in prison, to contract Hepatitis C assuming he was not already infected with the disease due to his own documented risk factors. Thus, Dollar's allegations do not allege a sufficiently culpable state of mind to support a violation of the Eighth Amendment.

If, on the other hand, the Court finds that Dollar has stated a constitutional violation, the qualified immunity inquiry proceeds to the "clearly established" stage of analysis.  In that stage of inquiry, the Plaintiff must meet his burden of showing that clearly established law would have indicated to the Defendants, under the circumstances of this case, that their conduct was unlawful.  It is true that the Supreme Court has held exposure to unsanitary conditions or communicable diseases can be violative of the Eighth Amendment. Hutto v. Finney, 437 U.S. 678 (1979); See also Helling v. McKinney, 509 U.S. 25 (1993) (holding prolonged exposure to second-hand smoke could potentially be found to cause substantial risk of serious harm, but still lacking the subjective intent required for deliberate indifference). However, no Supreme Court or Eleventh Circuit case law clearly establishes that a Defendant essentially "looking the other way" while an inmate performs a tattoo causing potential exposure to Hepatitis C constitutes deliberate indifference, especially when done in an attempt to resolve a gang dispute believing all parties are willing participants. Thus, the Defendants are entitled to qualified immunity, and this claim is due to be dismissed.

**IV.     STATE LAW TORT CLAIMS**

Dollar has brought claims alleging a series of statutory violations as well as violations of ADOC Administrative Regulation #208 – Employee Standards of Conduct and Discipline. However, these claims are due to be dismissed as neither are actionable under a private, civil cause of action. Ala.Code §14-3-16 (1975), cited by Dollar in the context of other code sections,

12

calls for a state misdemeanor charge against any individual who violates the provisions of Chapter 14. AR #208 outlines the protocol concerning ADOC employee behavior/work performance and provides a framework for internal disciplinary action, when necessary. See http://www.doc.alabama.gov/docs/AdminRegs/AR208.pdf. Neither claim is properly before this Court and both are due to be dismissed.

## V.   PLAINTIFF'S CASE IS BARRED BY THE PLRA.

Pursuant to the PLRA, the Plaintiff cannot recover damages without a physical injury that is more than *de minimis*.  See 42 U.S.C.A. § 1997e (e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312 -13 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's 1313 claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis."); Holifield v. Mobile County Sheriff's Dept. of Mobile County, Ala., 2008 WL 2246961 AT * 3 S.D. Ala. 2008) (same).  In the case at bar, Dollar cannot prove he sustained any injuries as a result of the Defendants' acts or omissions. Therefore, the Plaintiff fails to allege more than a *de minimis* injury, which bars any claims for damages.

## CONCLUSION

The Defendants submit that Plaintiff's claims that they have violated his constitutional rights have been disproven by the evidence now before the Court.  Consequently, they request that this Special Report be treated and denominated as a motion to dismiss and/or a motion for summary judgment. The Defendants have demonstrated through their evidence and legal arguments that there is no genuine issue of material fact in this case relating to a constitutional

violation. Further, they are entitled to Eleventh Amendment and Qualified Immunity. Any

claims unrelated to a constitutional violation are not properly before this Court and due to be

dismissed. Finally, Plaintiff's claims for damages violate the PLRA. Thus, they are entitled to a

judgment in his favor as a matter of law, and pray that this Honorable Court will grant summary

judgment in their favor dismissing all of Plaintiff's claims in this case.

Respectfully Submitted,

Luther Strange
Attorney General

Anne A. Hill (ADA054)
General Counsel

/s/ Elizabeth A. Sees
Elizabeth A. Sees (SEE007)
Assistant Attorney General

**ADDRESS OF COUNSEL:**
**Alabama Department of Corrections**
**Legal Division**
**301 Ripley Street**
**Post Office Box 301501**
**Montgomery, AL 36130-1501**
**334-353-3857**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of August, 2015, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following (or by U.S. Mail to the non-CM-ECF participants):

> Donald Eric Dollar
> AIS#285077
> Limestone Correctional Facility
> 28779 Nick Davis Road
> Harvest, AL 35749

/s/ Elizabeth A. Sees
Elizabeth A. Sees (SEE007)
Assistant Attorney General
